IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ENCARNACION TORRES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.   12-cv-64-MJR-SCW |
| | ) |
| JAMES FENOGLIO, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

#### I.   Introduction

This case is before the Court on a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Docs. 33 & 34).  The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).  It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT** Defendant's motion for summary judgment (Docs. 33 & 34).

#### II.   Findings of Fact

As a preliminary matter, the undersigned notes that Plaintiff has failed to file a responsive brief to Defendant Fenoglio's Motion for Summary Judgment.  Defendant's motion was filed on January 4, 2013, seeking summary judgment for Plaintiff's failure to exhaust his administrative remedies.  Plaintiff was given February 7, 2013 in which to file a Response (Doc. 33).  Plaintiff failed to do so.  The undersigned held a status conference on March 21, 2013 and warned Plaintiff that a failure to appear would result in a dismissal of his case for failure to prosecute (Docs. 36 & 37). Plaintiff appeared by phone at the hearing, but informed the Court that he was represented by counsel

and was waiting for his counsel to respond to the summary judgment motion (Doc. 37). The undersigned noted that no counsel had entered his appearance on behalf of Plaintiff and the deadline for responding to the pending summary judgment had passed. The undersigned, however, granted Plaintiff an extension of time in which to file a response to the summary judgment motion. Plaintiff was given until April 4, 2013 in which to file his responsive briefing (*Id.*). He was further warned that no further extensions would be granted. As of the date of this Report, Plaintiff has failed to file a responsive brief. Thus, under the Court's Local Rule 7.1, Plaintiff's failure to file a timely response is deemed an admission of the merits of the motion. **SDIL LOCAL RULE 7.1(g).**

Plaintiff's Complaint raises a claim of deliberate indifference against Defendant James Fenoglio for his treatment of Plaintiff while he was housed at Lawrence Correctional Center from 2009 through 2010. Plaintiff's Complaint alleges that after arriving at Lawrence Correctional Center in August 2009, Plaintiff noticed blood in his stool (Doc. 15 at p. 2). Although he was seen by Defendant Fenoglio, Defendant informed him that he was fine and prescribed Plaintiff Metamucil. Plaintiff alleged that his condition began to deteriorate after his appointment with Defendant Fenoglio (*Id.* at p. 3). Plaintiff's Complaint alleges that he began experiencing dizziness and shortness of breath and by the middle of 2010, he had decreased stamina during exercise. He had a "tight and bloated" feeling in his stomach and bled daily from his rectum (*Id.*). By the middle of 2011, Plaintiff's bleeding was severe enough that it turned the commode water red during defecation. Plaintiff alleged that Defendant Fenoglio failed to treat him, even though Plaintiff requested an MRI or CAT scan. Fenoglio allegedly indicated that the tests were too expensive and that Plaintiff was fine (*Id.*). Defendant Fenoglio only prescribed Plaintiff with Metamucil and performed a prostate exam after his initial meeting with Fenoglio. Plaintiff alleged that he had sent an estimated twenty-five requests for treatment from the health care unit which had been met "with utter indifference" (*Id.*).

On January 4, 2013, Defendant Fenolgio filed the instant motion for summary judgment for failure to exhaust administrative remedies (Docs. 33 & 34).  Defendant argues that he is entitled to summary judgment on Plaintiff's claims against him because Plaintiff failed to exhaust his administrative remedies.  Specifically, while Plaintiff submitted at least five grievances regarding his medical care at Lawrence Correctional Center, Plaintiff did not fully exhaust these grievances.

In support of his motion, Defendant offers five grievances that Plaintiff filed in relation to his treatment by the health care unit while housed at Lawrence Correctional Center. Plaintiff's first grievance was filed on December 4, 2009 and discussed his lack of treatment for bloody stool.  It was received by Plaintiff's counselor on December 28, 2009 and returned to him on January 22, 2010 (Doc. 34 Ex. B at p. 15).  The counselor indicated that Plaintiff was scheduled for laboratory tests regarding his medical issues and had an appointment with the nurse practitioner set for January 6, 2010 (*Id.*).  There is no indication in the record, and Plaintiff has not rebutted the fact, that the grievance was not sent to the grievance officer or chief administrative officer.  Instead, the ARB marked that the grievance was received on August 25, 2011 (*Id.*).  The ARB returned the grievance to Plaintiff with a notation that Plaintiff had failed to provide the ARB with a copy of the grievance officer's and chief administrative officer's response.

Plaintiff next filed a grievance regarding his treatment for bloody stool on June 5, 2011 (Doc. 34 Ex. B at p. 13).  There is no indication that the grievance was addressed by his counselor, or anyone else in the grievance process (*Id.*).  This grievance was also returned to Plaintiff by the ARB for failure to include responses from individuals in the grievance process chain (*Id.* at p. 12).

Plaintiff's third and fourth grievances were both filed on September 25, 2011 (Doc. 34 Ex. B at pp. 8-11).  These grievances were also regarding his treatment for bloody stool and indicated that he was dizzy, had blurred vision, and pains in his stomach (*Id.* at p. 11).  The first grievance was

labeled for emergency review, but was returned to Plaintiff on September 30, 2011 with a notation that the grievance was not an emergency (*Id.* at p. 10). Plaintiff then forwarded that grievance to his counselor on October 11, 2011 and it was returned to him on November 4, 2011 (*Id.*). The counselor informed Plaintiff that he had been seen on multiple occasions for his medical issues and that he was diagnosed with an internal hemorrhoid that was being treated. That grievance was received by the grievance officer on November 10, 2011, but was not reviewed until February 28, 2011 (Doc. 34 Ex. A at p.8). At that time, the grievance officer denied Plaintiff's grievance, finding no staff misconduct. The chief administrative officer conferred with the grievance officer's findings on March 9, 2012 (*Id.*).

However, prior to Plaintiff receiving the grievance back from the grievance officer, Plaintiff forwarded his grievance to the ARB which was received on December 27, 2011 (Doc. 34 Ex. B at p. 3). According to the records provided by the ARB, with the grievance Plaintiff submitted a letter to the ARB stating that he had been purposely delayed by the grievance process at his current facility and asked that his grievance be expedited so that he could bring his claims before the Court (*Id.* at p. 4). The ARB returned his grievance for failure to obtain the proper responses from his correctional facility on December 27, 2011 (*Id.* at p. 3).

Plaintiff also filed another grievance on September 25, 2011, this one also related to his medical care. This one was not labeled for emergency review and instead sent to the counselor on September 26, 2011 (Doc. 34 Ex. B at pp. 8-9). The Counselor returned Plaintiff's grievance on November 4, 2011 and the grievance appears to have been included with the grievance and letter sent to the ARB on December 27, 2011 (*Id.* at pp. 3 & 8). This grievance was also returned to Plaintiff for failure to obtain a response from the grievance officer and chief administrative officer.

Plaintiff's last grievance regarding his medical treatment appears to have been created on October 12, 2011 (Doc. 34 Ex. B at p. 6). This grievance, however, appears to discuss a different

medical condition as Plaintiff discusses his ears hurting and a cough with sore throat and mucus (*Id.* at pp. 6-7). This grievance was submitted to his counselor who returned the grievance to him on November 4, 2011. It does not appear that Plaintiff sought a review of his grievance from the grievance officer or the chief administrative officer. It also was stamped as received by the ARB on December 27, 2011 and returned with his September 25, 2011 grievances (*Id.* at p. 3).

### III.    Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).**

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. **Pavey v. Conley, 544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.** Although the court in *Pavey* included a hearing as one of the steps in determining whether the plaintiff had satisfied the exhaustion requirement, "there is no reason to conduct an evidentiary hearing" in a "situation [where] there are no disputed facts regarding exhaustion, only a legal question." **Doss v. Gilkey, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009) (Gilbert, Phil J.).**

A.      **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Torres was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800 et seq.** The grievance procedures first require inmates to speak

with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's

decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

**B.     Analysis**

Here, Defendant argues, and Plaintiff has not denied, that Plaintiff failed to exhaust his administrative remedies as to treatment for bloody stool by Defendant Fenoglio. Although Plaintiff initiated four grievances regarding his treatment for his bloody stool, one on December 24, 2009, one on June 5, 2011, and two on September 25, 2011, Plaintiff did not fully exhaust those grievances.[1] For each grievance, he submitted and received a response from his counselor but either did not pursue his grievance further through the grievance process or sought to directly appeal his grievance to the ARB.[2] All of his grievances were returned from the ARB on procedural grounds, namely his failure to obtain a grievance officer and chief administrative officer response to his grievances. The Court

---

[1] The Court notes that Plaintiff filed another grievance on October 12, 2011 regarding his medical treatment, but his allegations in this grievance does not appear to be related to the allegations which form the basis of his Complaint. This grievance focuses on an infection in his ears and throat. However, the Court notes that Plaintiff's counselor returned his grievance with an note that Plaintiff was diagnosed and being treated for internal hemorrhoids, the complaint at issue in this case. In any event, this grievance was also not fully exhausted.

[2] The Court notes that Plaintiff's June 5, 2011 grievance was submitted directly to the ARB on August 25, 2011 with no indication that he submitted the grievance to his counselor beforehand.

notes that one of his September 25, 2011 grievances was submitted for emergency review, but was returned to him on September 30, 2011. While Plaintiff could have directly appealed *that* decision to the ARB, he chose not to do so. *See Thorton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005); *Glick v. Walker*, 385 Fed. Appx. 579, 583, 2010 WL 2775864 at *4 (7th Cir. 2010) (Finding that "defendants' position that [Glick] was required to go back to the grievance officer and start over after his emergency grievance had been rejected by the warden and the ARB is at odds" with the administrative code and case law as "an inmate who seeks emergency review…has no obligation to resubmit the grievance through the normal channels."). Instead, Plaintiff sought to pursue his grievance through the normal grievance process, filing his grievance with his counselor on October 11, 2011. Plaintiff also submitted the grievance to the grievance officer, but did not wait for a proper response, instead submitting his grievance to the ARB on December 27, 2011. By this time, his deadline for appealing the emergency review portion of his grievance had long since passed[3] and his grievance had not properly been grieved through Lawrence Correctional Officer. In fact, Plaintiff did not receive a response from his grievance officer on the grievance until February 28, 2012 and did not receive a response from the Chief Administrative Officer until March 9, 2012. Thus, the ARB properly returned his grievance received December 27, 2011 for his failure to obtain the proper responses at the institutional level. Accordingly, as none of his four grievances were fully exhausted, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has failed to exhaust his administrative remedies and **GRANT** summary judgment in favor of Defendant Fenoglio.

---

[3] Plaintiff had thirty days from the receipt of his grievance to appeal to the ARB. 20 Ill. Admin. Code §504.850(a). Plaintiff received his grievance back from the chief administrative officer with a finding that the grievance was not an emergency on September 30, 2011. Thus, by the time he sent his grievance to the ARB and it was received on December 27, 2011, the deadline for appealing the emergency review had passed.

## IV. Conclusion

In conclusions, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has failed to exhaust his administrative remedies as to his deliberate indifference claim against Defendant Fenoglio, **GRANT** Fenoglio's summary judgment motion (Docs. 33 & 34), and **DISMISS** Plaintiff's claims against Fenoglio **without prejudice**.

Should the Court adopt the findings and conclusions in this Report, no further claims will remain in this case and judgment can be entered.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **May 28, 2013.**

**IT IS SO ORDERED**.
DATED: May 10, 2013.

                                                       */s/ Stephen C. Williams*
                                                       STEPHEN C. WILLIAMS
                                                       United States Magistrate Judge